**Opinion filed August 16, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00244-CR

_____

## DWAYNE UTERRAL HARDEMAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR23428**

### O P I N I O N

The jury convicted Dwayne Uterral Hardeman of assault family violence by occlusion. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (West Supp. 2017). After finding two prior felony allegations to be "true" for enhancement purposes, the jury assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. Appellant presents fifteen points of error in this appeal. We conclude that Appellant was entitled to a charge on a lesser included offense. Accordingly, we reverse and remand.

*Background Facts*

The victim in this case is Appellant's stepdaughter, L.A., who was seventeen years old at the time of the incident and nineteen years old at the time of trial. The indictment charged Appellant with intentionally, knowingly, or recklessly causing bodily injury to L.A., a member of Appellant's family or household, by applying pressure to her throat or neck such that it impeded her normal breathing or circulation of the blood.

Prior to trial, L.A. recanted and signed an affidavit of non-prosecution. L.A. told prosecutors that she did not remember what happened as evidenced by the prosecutor's *Brady*[1] letter to defense counsel. All of the eyewitnesses to the incident, who were members of Appellant's family, also denied prior to trial that Appellant assaulted L.A. L.A.'s mother, M.H., told prosecutors that Appellant did not assault L.A. L.A.'s two sisters, D.S. and J.H., told prosecutors that L.A. said that Appellant did not assault her. D.S. also told prosecutors that L.A. said she lied to police about the assault.

The State relied heavily at trial on L.A.'s initial allegations to police officers. On the day of the assault, L.A. told officers that she was arguing with Appellant when he grabbed her, placed both of his hands around her neck, and choked her after she told Appellant that she wanted to leave. The next day, L.A.'s grandmother brought her to the police station to talk with Detective Robert Lee of the Brownwood Police Department. L.A. told Detective Lee that Appellant told her to get in the house and that, when L.A. refused, Appellant grabbed her by the back of the neck and started choking her.

At trial, L.A. testified that Appellant is her stepfather, who has raised her since she was three. In September 2014, L.A. traveled to Stephenville with her mother,

---

[1]*Brady v. Maryland*, 373 U.S. 83 (1963).

her mother's friend, and her sisters to go to a park. While there, L.A. took several prescription pills "to get high." Upon returning home, L.A. and Appellant argued over her drug use. L.A. testified that, in her drug-induced state, she was trying to run toward the road occupied by moving vehicles and that Appellant tried to stop her from running into the road by grabbing the collar of her shirt. L.A. testified that Appellant did not choke her and did not put his hand on her chest or neck.[2] L.A. remembered her mother yelling, "Stop, let her go." L.A. averted Appellant's hold and took off running down the street.

Jeff Davis, a volunteer firefighter, testified that he drove past a house where he saw a male and female arguing outside. Davis and his fiancée, Morgan Wright, saw L.A. "sprinting down the sidewalk" and "looking fearful." After Davis pulled over, L.A. ran up to his vehicle frantically crying and out of breath. Davis and Wright transported L.A. to the Law Enforcement Center. Davis testified that he saw a silver vehicle pull out of the driveway and follow him. Appellant, who was driving the silver vehicle, followed closely behind them as they traveled to the Law Enforcement Center.

After L.A. composed herself, she told Davis that Appellant choked her. Wright testified that L.A. kept touching her neck almost "like something had been holding it." Wright also testified that L.A. kept coughing and saying, "He has choked me, and they are going to send me back." Both Davis and Wright testified that L.A. did not appear to be under the influence of drugs.

M.H. (L.A.'s mother and Appellant's longtime partner) subsequently testified that, upon their return from Stephenville, L.A. was acting "vicious" and crazy because of the prescription pills. According to M.H., Appellant grabbed L.A.'s shirt because L.A. was acting crazy and trying to run out onto the freeway. However,

---

[2]L.A. also testified that she was "angry at [her] dad so [she] made some stuff up," and after getting over being upset, she asked the detective not to prosecute Appellant.

M.H. testified that Appellant did not touch L.A.'s neck and that she had no idea why L.A. would have been coughing or grabbing at her neck. M.H. did not remember saying, "Don't touch my daughter that way."

Sergeant Troy Carroll with the Brownwood Police Department testified that he was dispatched to the Law Enforcement Center in response to Davis's domestic violence call. Upon arrival at the center, Sergeant Carroll separated the drivers and spoke with Appellant and M.H. Sergeant Carroll testified that Appellant told him, "I didn't choke her," and that Appellant admitted to grabbing L.A. by the back of the neck and then the shirt. Sergeant Carroll also testified that L.A. did not appear to be acting out of control from being high. Based on the information gathered at the time, Sergeant Carroll determined that the situation represented a possible discipline problem and not a domestic violence problem.

Sergeant Stephanie Morgan with the Brownwood Police Department assisted Sergeant Carroll in responding to the domestic violence call. Sergeant Morgan testified that she spoke with L.A. and that L.A. appeared to be upset, frustrated, and scared, but did not appear to be intoxicated. Sergeant Morgan testified that she did not observe any markings or bruising on L.A.'s neck; however, she had previously dealt with strangulations where the victim did not present with any physical marks or bruising. L.A. told Sergeant Morgan that she said something to Appellant that caused him to put both of his hands around her neck and choke her. Appellant was not arrested as a result of these initial interviews.

D.S. (Appellant's other stepdaughter and L.A.'s younger sister) also testified at trial. D.S. corroborated L.A.'s testimony that L.A. took pills. D.S. testified that, when they arrived back at the house from the park, there was an argument about L.A. running out to the road. D.S. testified that she did not see Appellant touch L.A. because she was bending down to pick up something. D.S. testified that, later, L.A. told her that Appellant had choked her. However, a couple of days after that, L.A.

told her that nothing had happened. D.S. testified that she told officers that L.A. could not breathe based on what L.A. had told her. D.S. did not think that L.A. had gasped for air, and D.S. said that L.A. never appeared to be incapable of breathing.

Detective Doug Hurt with the Brownwood Police Department testified about an interview he conducted with D.S. on September 10, 2014. During the interview, D.S. told Detective Hurt that Appellant put L.A. in a choke hold, which prompted M.H. to respond, "You're not going to grab my daughter like that." D.S. stated that L.A. told her she could not breathe, but D.S. did not know for sure. D.S. told Detective Hurt that L.A. later told D.S. that Appellant did not choke her, but D.S. said that she and her mother saw Appellant choke L.A.

During the defense's case-in-chief, L.A. was recalled to the stand. L.A. testified that her breathing was not cut off as a result of anything Appellant did and that Appellant did not choke her. L.A. again testified that she was lying when she first made the initial allegations and that Appellant did not "deserve this right now."

Prior to closing arguments, defense counsel requested that the jury be charged on the lesser included offense of assault family violence and offensive contact assault. *See* PENAL § 22.01 (a)(1), (a)(3). On appeal, Appellant only complains of the omission of the charge on assault family violence. Accordingly, we restrict our discussion to the lesser included offense of assault family violence. Defense counsel asserted that there was evidence that Appellant "grabbed ahold of [L.A.] by the back of the neck, which would not cause occlusion." The State responded that, under Appellant's claim that he was acting as a parent trying to prevent L.A. from running out into a roadway, his conduct could not have constituted a gross deviation from the standard of care of an ordinary person under the standard of recklessness. *See id.* § 6.03(c) (West 2011). The State additionally asserted that the instruction on accident or mistake was sufficient to address Appellant's contention because of the defense presented at trial, mainly that Appellant was acting as a parent to prevent

5

L.A. from running out into the roadway.[3]  The trial court overruled Appellant's request for a charge on the lesser included offense of simple assault.

*Analysis*

In his fifteenth[4] issue, Appellant challenges the trial court's denial of his request for an instruction on simple assault.  *See id.* § 22.01(a)(1).  We employ a two-step test to determine whether the trial court was required to give a requested charge on a lesser included offense.  *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *see Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007).  The first step is to determine whether the requested instruction pertains to an offense that is a lesser included offense of the charged offense, which is a matter of law.  *Bullock*, 509 S.W.3d at 924 (citing *Hall*, 225 S.W.3d at 535–36).  Under this first step of the test, an offense is a lesser included offense if it is within the proof necessary to establish the offense charged.  *Id.* (citing *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011)).

The State does not contest that the first prong of the test was satisfied in this case.  An offense is a lesser included offense of another offense if the indictment for the greater offense either (1) alleges all of the elements of the lesser included offense or (2) alleges elements plus facts from which all of the elements of the lesser included offense may be deduced.  *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim.

---

[3]The application portion of the charge contained a paragraph that provided as follows:

> If you find from the evidence that on the occasion in question [Appellant], while attempting to prevent [L.A.] from running away and possibly getting hit by a car, grabbed her shirt or neck with his hand and accidently or by mistake caused bodily injury to [L.A.] or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of Assault Family Violence – Occlusion, and say by your verdict "not guilty[.]"

*See* PENAL § 8.02.

[4]In his first issue, Appellant contends that the trial court erred in denying a motion for mistrial concerning a statement of racial bias made by a potential juror during voir dire.  Appellant complains about the admission of various evidence in his second through fourteenth issues.  We do not reach these issues because our disposition of the fifteenth issue is dispositive of this appeal.

App. 2013).  Section 22.01 of the Texas Penal Code describes assault family violence by occlusion as assault with two additional requirements—that it be committed against a family member and be committed by occlusion.  Assault family violence by occlusion is a third-degree felony.  *See* PENAL § 22.01(b)(2)(B).  Accordingly, simple assault is a lesser included offense because it is included within the proof necessary to establish assault family violence by strangulation.  *See Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016) (recognizing that simple assault may be enhanced to a third-degree felony committed against a family member by occlusion); *Harrison v. State*, No. 06-11-00196-CR, 2012 WL 1813519, at *5 (Tex. App.—Texarkana May 18, 2012, pet. ref'd) (mem. op., not designated for publication) ("[A]ssault is established by proof of the same or less than all the facts required to establish the commission of assault (family violence) by occlusion.").[5]

The second step in the analysis asks whether there is evidence in the record that supports giving the instruction to the jury.  *Bullock*, 509 S.W.3d at 924–25 (citing *Sweed*, 351 S.W.3d at 68).  "The second step is a question of fact and is based on the evidence presented at trial."  *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012).  Under the second step, a defendant is entitled to an instruction on a lesser included offense when there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser included offense.  *Bullock*, 509 S.W.3d at 925 (citing *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011)).  "The evidence must establish that the lesser

---

[5]*See also Guzman v. State*, No. 14-17-00498-CR, 2018 WL 3118593, at *9 (Tex. App.—Houston [14th Dist.] June 26, 2018, no pet. h.); *Webb v. State*, No. 10-16-00212-CR, 2017 WL 4543660, at *3 (Tex. App.—Waco Oct. 11, 2017, pet. ref'd) (mem. op., not designated for publication); *Amaro v. State*, No. 08-14-00052-CR, 2016 WL 3344568, at *8–9 (Tex. App.—El Paso June 14, 2016, no pet.) (not designated for publication).

included offense is a valid, rational alternative to the charged offense." *Id.* As stated by the court in *Bullock*:

> More particularly, the second step requires examining all the evidence admitted at trial, not just the evidence presented by the defendant. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011). The entire record is considered; a statement made by the defendant cannot be plucked out of the record and examined in a vacuum. *Enriquez v. State*, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000). Anything more than a scintilla of evidence is adequate to entitle a defendant to a lesser charge. *Sweed*, 351 S.W.3d at 68. Although this threshold showing is low, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted. *Id.* "However, we may not consider the credibility of the evidence and whether it conflicts with other evidence or is controverted." *Goad*, 354 S.W.3d at 446–47. "Accordingly, we have stated that the standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Sweed*, 351 S.W.3d at 68.

509 S.W.3d at 925.

In considering whether a lesser offense is a valid, rational alternative to the charged offense, we must compare the statutory requirements between the greater offense and the lesser offense to determine whether evidence exists to support a conviction for assault but not assault family violence by occlusion. *See id.* In this case, there is no contention that L.A. was not a family member.[6] Accordingly, we focus our attention on the occlusion element. Affirmative evidence that is directly germane to the existence of the lesser included offense is required. *See Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). "Meeting this threshold

---

[6] The Austin Court of Appeals addressed the family member element in *Leach v. State*, No. 03-13-00784-CR, 2015 WL 8607060, at *5–7 (Tex. App.—Austin Dec. 9, 2015, no pet.) (mem. op., not designated for publication).

requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 382 S.W.3d at 385.

In *Harrison*, an appeal arising from a conviction for assault family violence by occlusion, the Texarkana Court of Appeals determined that the defendant was not entitled to a charge on the lesser included offense of assault because there was no affirmative evidence that the defendant did not choke the victim. 2012 WL 1813519, at *6–7. The Fort Worth Court of Appeals employed the same analysis and reached the same conclusion in *Pratt v. State*, No. 02-13-00039-CR, 2013 WL 5675118, at *3–4 (Tex. App.—Fort Worth Oct. 17, 2013, no pet.) (mem. op., not designated for publication). The Waco Court of Appeals also employed the same analysis and reached the same conclusion in *Webb*. 2017 WL 4543660, at *4 ("[B]ecause there is no affirmative evidence that [the victim] was not choked, the second step of the . . . test has not been met.").

Appellant asserts that he was entitled to an instruction on the lesser included offense of simple assault because, among other things, there was testimony that Appellant's actions did not impede L.A.'s breath or circulation. L.A. testified that Appellant did not choke her. L.A. also testified that her breathing was not cut off or impeded in any manner. M.H. also testified that Appellant did not choke L.A. Officer Morgan testified that there were no marks or bruises on L.A.'s neck. Based upon this evidence, Appellant contends that a rational jury could have found him guilty only of simple assault. We agree. Under the analysis employed by our sister courts in *Harrison*, *Pratt*, and *Webb*, the evidence cited by Appellant constitutes affirmative evidence that Appellant did not choke or occlude L.A.'s breathing or blood flow.

The State responds that there must also be "a scintilla of evidence that Appellant grossly deviated from the standard of care that an ordinary person in his

position would have exercised under all the circumstances in causing that bodily injury" as it relates to Appellant's defensive theory. In this regard, the State contends that Appellant's defensive theory that he grabbed L.A. to prevent her from running into the road negates the availability of a lesser-included-offense instruction. The State has not cited any authority, and we have found none, mandating that the defendant is restricted to his defensive theory in order to obtain a charge on a lesser included offense. To the contrary, the Court of Criminal Appeals noted in *Goad* that the second step requires examining all the evidence admitted at trial, not just the evidence presented by the defendant. 354 S.W.3d at 446 (citing *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). Accordingly, affirmative evidence from any source can fulfill the second step of the analysis.

Moreover, there is evidence that Appellant grabbed L.A. in some manner during the argument. L.A. testified that Appellant grabbed her by the bottom of her shirt and then by the collar of her shirt. M.H. testified that Appellant grabbed L.A. "[f]rom her shirt." Sergeant Carroll testified that Appellant admitted to grabbing L.A. by the back of the neck. Additionally, Sergeant Carroll testified that M.H. admitted to him that Appellant grabbed L.A. by the back of the neck.

We conclude that the jury could have rationally believed that Appellant caused L.A. bodily injury in the manner that he grabbed her but that he did not impede her breath or blood by applying pressure to her throat or neck. Therefore, there was more than a scintilla of evidence that Appellant may have intentionally, knowingly, or recklessly caused L.A. bodily injury by grabbing her, but did not intentionally, knowingly, or recklessly impede her breathing or blood circulation. Thus, the trial court erred in denying the request for a charge on the lesser included offense of simple assault.

Having found error in the trial court's denial of the requested instruction on the lesser included offense of simple assault, we must determine whether that error

10

requires reversal. The erroneous refusal to give a requested instruction on a lesser included offense is charge error subject to an *Almanza*[7] harm analysis. *Saunders v. State*, 840 S.W.2d 390, 392 (Tex. Crim. App. 1992); *Nangurai v. State*, 507 S.W.3d 229, 234 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Under *Almanza*, when jury-charge error has been preserved, as it was in this case, we will reverse if the error in the court's charge resulted in some harm to the accused. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *see Almanza*, 686 S.W.2d at 171. "[T]he harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005). Ordinarily, if the absence of a charge on the lesser included offense left the jury with the sole option either to convict the defendant of the charged offense or to acquit him, some harm exists. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995).

The State asserts that, because of the inclusion of the defensive instruction on accident or mistake, Appellant did not suffer harm. The State contends that this instruction "adequately provided the jury with a way to assess [the evidence] in a manner that protected Appellant." We disagree. Without a charge on the lesser included offense of simple assault, the jury only had the option to either convict Appellant of the charged felony offense or acquit him. In this situation, some harm exists, particularly when one considers that the maximum punishment for simple assault is one year in jail, whereas Appellant received a life sentence arising from his felony conviction for assault family violence by occlusion that was enhanced by his prior felony convictions. *See* PENAL §§ 12.21, 12.43 (confinement as punishment

---

[7]*Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

for class A misdemeanor may not exceed one year in jail); *Bignall v. State*, 899 S.W.2d 282, 284 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (holding that the imposition of a penalty that is more severe than the potential maximum penalty for the requested lesser included offense is evidence of some harm). Accordingly, we conclude that Appellant suffered some harm. We sustain Appellant's fifteenth issue on appeal. We do not reach Appellant's other issues because of our disposition of his fifteenth issue. *See* TEX. R. APP. P. 47.1.

### *This Court's Ruling*

We reverse the judgment of the trial court, and we remand the cause for a new trial.


JOHN M. BAILEY

JUSTICE


August 16, 2018

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J., Bailey, J.,
and Wright, S.C.J.[8]

Willson, J., not participating.

---

[8]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.