

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00430-CR

Orlando **ORTIZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, La Salle County, Texas
Trial Court No. 17-06-00056-CRL
Honorable Donna S. Rayes, Judge Presiding

Opinion by:   Irene Rios, Justice

Sitting:   Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: September 11, 2019

REVERSED AND REMANDED

Orlando Ortiz was convicted by a jury of felony assault involving family violence by occlusion.[1]  On appeal, Ortiz contends the trial court erred by: (1) denying his request to include the lesser-included offense of misdemeanor assault in the jury charge; (2) admitting several photographs as evidence.  Because we hold some harm resulted from the trial court's erroneous

---

[1] Occlusion is shown by "impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth."  TEX. PENAL CODE ANN. § 22.01(b)(2)(B). An assault involves "family violence" when it is "committed against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code."  *See id*.  Section 71.0021(b) describes dating relationships which include relationships "between individuals who have or have had a continuing relationship of a romantic or intimate nature."  TEX. FAM. CODE ANN. § 71.0021(b).

failure to include the lesser-included offense, we reverse the trial court's judgment of conviction and remand the cause to the trial court for further proceedings. We do not address Ortiz's second issue regarding the photographs. TEX. R. APP. P. 47.1 (providing opinions should be as brief as practicable and address only those issues necessary to final disposition of the appeal).

## BACKGROUND

Ortiz was charged with two counts of sexual assault and one count of felony assault involving family violence by occlusion. The evidence at trial established Odilia Gomez did not report for work on August 12, 2016, and did not respond to text messages. As a result, her boss reported her concern to an administrative assistant at the La Salle County Sheriff's Office, and Sergeant Ricky Galvan was dispatched to Gomez's home to check on her.

Sergeant Galvan testified he went to Gomez's home, and her sons stated they were unsure of her location. Later that afternoon, however, Gomez sent a text message which led Sergeant Galvan and other officers to her location. Upon arriving at the location, Sergeant Galvan testified he knocked on the back door and asked for Ortiz, who Sergeant Galvan understood was Gomez's ex-boyfriend. Ortiz was asked to step outside into the back yard, and the owner of the home gave Sergeant Galvan permission to enter. Upon entering, Sergeant Galvan saw Gomez bruised and limping and asked if she wanted to go home. When Gomez said she did, Sergeant Galvan assisted her outside through the front door and called EMS. Sergeant Galvan proceeded to take photographs of Gomez's injuries which were admitted into evidence.

Gomez testified she previously lived with Ortiz for a period of time until their relationship ended in July of 2016. On August 12, 2016, Gomez stated she went to the house where Ortiz was staying because Ortiz had texted her about damage to a motorcycle she and one of her sons owned which was at that location. Ortiz was living in a bedroom next to a garage or shop which was a separate building from the house. Gomez admitted she had consensual sex with Ortiz and stayed

the night with him at that location on August 10, 2016. Gomez stated Ortiz was angry when she arrived and ordered her into his bedroom. As she entered the room, Gomez testified Ortiz hit her on the back of the head, knocking her onto the bed and then continued hitting her. After Gomez turned to lay on her back, she testified Ortiz started choking her while restraining her with his knees on her arms. After Gomez was able to push Ortiz off her at one point, she stated he then proceeded to choke her again. When Gomez was able to push Ortiz off again, she stated he grabbed and twisted her left leg, causing her great pain as her knee popped. Gomez testified Ortiz then tried to stab her in the neck with a knife, and, during the subsequent struggle over the knife, Ortiz put his hands over her hands and tried to stab himself with the knife. Gomez stated Ortiz told her she would be responsible if he died, and he then used an extension cord in an attempt to hang himself. When he stopped that attempt, Gomez stated he proceeded to verbally abuse her over her posts with men on Facebook and demanded oral sex. Gomez testified she later asked for a glass of water, and, in response to Ortiz's request through the window to the bedroom, a friend handed him a glass of water and a bottle of water that was frozen. Gomez stated Ortiz then asked Gomez if she would have intercourse with him, and she acquiesced. When Ortiz said the intercourse was not working for him, Gomez testified he again demanded oral sex. During that time, Gomez testified Ortiz hit her with the frozen water bottle on the side of her head and on her right forearm when she tried to block another blow to her head. Gomez stated she then asked to use the restroom which was in the house, and Ortiz assisted Gomez inside the house. After Ortiz left to pick up food, Gomez testified she sent the text message which led law enforcement to her location.

Gomez was transported to a hospital by ambulance and then driven by her son to another hospital for a sexual assault exam several hours later. The nurse who examined Gomez testified regarding her injuries which included swelling, abrasions, and bruising. Photographs of the injuries taken by the nurse were admitted into evidence.

Investigator Esmeralda Gonzalez testified she was also dispatched to the scene and observed the injuries to Gomez. Investigator Gonzalez took additional photographs of the injuries which were admitted into evidence. Investigator Gonzalez also took photographs of Gomez's injuries three days later which were admitted into evidence.

Ortiz testified he and Gomez planned to see each other on August 12, 2016, after she spent the night with him on August 10, 2016. Ortiz texted Gomez not to come over after a friend showed him posts from Gomez's Facebook account of Gomez flirting with another man. Ortiz testified he and Gomez began arguing when she arrived because he was upset that Gomez constantly accused him of cheating while she was flirting with other men. Ortiz admitted he pushed Gomez to the bed with an open palm to the back of her head when she swung at him. Ortiz stated he also grabbed Gomez's arm when she swung at him a second time. Ortiz further admitted he restrained Gomez to keep her from hitting him which included grabbing her with both of his hands around her neck. Ortiz denied squeezing Gomez's neck or attempting to choke her. Ortiz further admitted that he caught Ortiz's leg and pushed it when she tried to kick him, and he heard her knee pop. Because the pop scared him, Ortiz told Gomez he wanted to take her to the hospital, but Gomez did not want to go. Ortiz testified he and Gomez calmed down and began talking. Ortiz stated he handed Gomez a knife and told her to hurt him if she wanted. Ortiz further stated he threw an extension cord over the rafters in the room to see if Gomez wanted him to hurt himself in that manner. Ortiz and Gomez continued to talk and then engaged in consensual sex. Ortiz testified he later carried Gomez inside the house to use the restroom, and they watched television for about three hours before he left to pick up food. Ortiz testified Gomez's injuries shown in the photographs were likely the result of the "scuffle on the bed" during which Gomez was lying on top of his boots which were on the bed.

After hearing all the evidence, the jury acquitted Ortiz of the sexual assault charges but found him guilty of the felony offense of assault involving family violence by occlusion. Ortiz was sentenced by the trial court as a habitual offender to forty years' imprisonment. The trial court entered judgments of acquittal on the sexual assault charges and a judgment of conviction on the felony charge of assault involving family violence by occlusion. Ortiz appeals the judgment of conviction.

## LESSER-INCLUDED OFFENSE

In his first issue, Ortiz contends the trial court erred in denying his request to include the lesser-included offense of misdemeanor assault in the jury charge.

"We use a two-step analysis to determine if a defendant is entitled to a lesser-offense instruction." *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018). First, we compare the statutory elements and the facts of the offense as alleged in the indictment with the statutory elements of the requested lesser-included offense to determine whether the lesser-included offense is included within the proof necessary to establish the charged offense. *See id*. at 670-71. "Second, there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense." *Id*. at 671. "[The second] requirement is met if there is (1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Id*. "The evidence raising the lesser offense must be affirmatively in the record." *Id*. "We consider all admitted evidence without regard to the evidence's credibility or potential contradictions or conflicts." *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017). "[I]f there is more than a scintilla of evidence raising the lesser offense and negating or rebutting an element of the greater offense, the defendant is entitled to a lesser-charge instruction." *Ritcherson*, 568 S.W.3d at 671.

Here, the State concedes the first prong of the test was met, and we agree. "Section 22.01 of the Texas Penal Code describes assault family violence by occlusion as assault with two additional requirements—that it be committed against a family member and be committed by occlusion."[2] *Hardeman v. State*, 556 S.W.3d 916, 921 (Tex. App.—Eastland 2018, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 22.01(b)(2)(B). "Accordingly, simple assault is a lesser included offense because it is included within the proof necessary to establish assault family violence by strangulation." *Hardeman*, 556 S.W.3d 921.

Next, we consider whether there is evidence from which a rational jury could find Ortiz guilty of only the lesser offense. *See Ritcherson*, 568 S.W.3d at 671. The State contends the second prong of the test was not satisfied because there was no evidence to support a finding that Ortiz caused Gomez bodily injury but did not choke her. The State asserts the jury "would have to disbelieve [Gomez's] testimony that [Ortiz] choked her, while simultaneously believing that the placing of [Ortiz's] hands on her neck caused bodily injury." Ortiz responds that the bodily injury necessary to be shown for the lesser offense of assault was not required to be bodily injury to Gomez's neck.

As previously noted, the second prong of the test is met "if there is more than a scintilla of evidence raising the lesser offense and negating or rebutting an element of the greater offense." *Ritcherson*, 568 S.W.3d at 671. Based on the evidence presented at trial, the jury could have believed Ortiz's testimony that he did not choke Gomez.[3] The jury could also have found from the testimony, however, that Ortiz caused bodily injury to Gomez's knee, which the testimony

---

[2] *Hardeman* uses the term "family member;" however, as previously noted, family violence extends to dating relationships. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B); TEX. FAM. CODE ANN. § 71.0021(b).

[3] Ortiz's testimony that he did not choke Gomez makes this case factually distinguishable from our unpublished opinion in *Johnson v. State*, No. 04-17-00398-CR, 2018 WL 3260921 (Tex. App.—San Antonio July 5, 2018, pet. ref'd) (mem. op., not designated for publication), which the State cites in its brief. In *Johnson*, the record did not contain any "affirmative evidence to negate the evidence that the victim was choked." *Id*. at *2.

established popped based on Ortiz twisting or pushing Gomez's leg. Alternatively, the jury could have found Ortiz caused the bruising to Gomez's neck, arms, shoulders, and wrists by his actions in restraining her, while disbelieving he was restraining her because she was attacking him. In other words, the jury could have found Ortiz caused bodily injury to Gomez but did not choke her by believing portions of the testimony presented at trial while disbelieving other portions. Accordingly, we hold there is evidence from which a rational jury could find Ortiz guilty of only the lesser offense. *See Hardeman*, 556 S.W.3d at 922-23 (holding trial court erred in denying lesser offense of assault where the jury could have rationally believed testimony that the defendant did not choke the victim but also believed he caused bodily injury to the victim through testimony establishing he grabbed her in some manner during an argument).

Having found error in the trial court's denial of the requested instruction on the lesser included offense of simple assault, we must determine whether that error requires reversal. We analyze harm regarding an erroneous refusal to give a requested instruction on a lesser-included offense under the standard enunciated in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). *Braughton v. State*, 569 S.W.3d 592, 613 (Tex. Crim. App. 2018). "When, as here, the defendant has preserved error by requesting the challenged instruction, we reverse the conviction if the denial of the instruction resulted in some harm to the defendant." *Id*. Ordinarily, if the absence of a charge on the lesser included offense left the jury with the sole option either to convict the defendant of the greater offense or to acquit him, some harm exists. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995). Stated differently, "[t]he harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has a reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." *Hardeman*, 556 S.W.3d at 923 (internal

quotation omitted).  Here, the denial of the lesser offense placed the jury in this dilemma; therefore, the failure to submit the lesser offense resulted in some harm.

## CONCLUSION

Because the trial court's erroneous refusal to include the requested instruction on the lesser-included offense of misdemeanor assault resulted in some harm to Ortiz, we reverse the trial court's judgment of conviction and remand the cause to the trial court for further proceedings.

Irene Rios, Justice

DO NOT PUBLISH