**Opinion filed February 17, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00087-CR

_____

### JAMES MARK JOKEL, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. CR15254**

### O P I N I O N

Appellant, James Mark Jokel, was arrested after he repeatedly struck the back door of his parents' home in Erath County with an axe. The State subsequently indicted Appellant for the offense of burglary. The indictment alleged that Appellant "intentionally and knowingly enter[ed] a habitation . . . and attempted to commit or committed an aggravated assault against Bobby Jokel"—Appellant's father. *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2019). The indictment further alleged that Appellant exhibited a deadly weapon, an axe, during the commission of the

offense. After the jury found Appellant guilty as charged in the indictment, and upon Appellant's election, the trial court assessed Appellant's punishment at imprisonment for thirty-five years and a $2,000 fine. *See id.* § 30.02(d)(1)–(2). In his sole issue on appeal, Appellant contends that the trial court erred when it refused to instruct the jury on the lesser included offense of aggravated assault. We reverse and remand.

## I. *Factual Background*

Appellant has not challenged the sufficiency of the evidence; therefore, we have tailored our discussion to the facts that are necessary to the disposition of this appeal.

Appellant's parents, Sandra and Bobby Jokel, are married and reside together in Stephenville. At the time of his arrest, Appellant resided primarily in his parents' travel trailer that was located behind the Jokel residence. The evidence presented at trial was undisputed that Appellant and Bobby had a contentious and "challenging" relationship.

The back of the Jokel residence had glass French doors that led into the backyard, where the Jokels' travel trailer and the barn that they used as a shop were situated. On the morning of Appellant's arrest, Appellant was in the backyard by the barn working on Bobby's pickup. At some point, Bobby went to let his dog out of the house and into the backyard. When he opened the back door, Bobby noticed that the hood of his pickup was raised and saw that Appellant was "doing something" with the pickup. Bobby shouted at Appellant to "leave [his] pickup alone."

According to Bobby, Appellant yelled, "I'll kill you, you SOB, I'll kill you," and immediately "[ran] at the door with an axe in his hand." Bobby reacted by closing the back door, locking it, and dialing 9-1-1 as Appellant swung at the glass doors with the axe. According to Appellant, he heard Bobby shout at him to "get away from [the] truck" and then Appellant "heard the door slam." Appellant

2

testified that Bobby would "always" angrily slam the door shut and then lock it. This angered Appellant. He testified that although he had a key to the back door, his objective that morning was to "tear that . . . door down" in order to teach Bobby a lesson about slamming it. To that end, Appellant went into the shop and retrieved an axe because it "was the first thing that was handy."

While Appellant was striking the back door with the axe, Bobby retrieved his handgun and pepper spray and waited for law enforcement to arrive. Bobby testified that Appellant did not "[enter] the house and swing the axe at [him]." Rather, when Appellant ceased striking the back door with the axe, he walked away from the house and into the field that was behind the barn. Appellant was standing in knee-high grass, shouting, and swearing when State Troopers eventually located him in the field. Appellant was still holding the axe. After some discussion with the troopers who approached him, Appellant eventually surrendered to Constable Jason Schipper when he arrived at the scene.

Sandra was in Fort Worth at the time of the incident. Sandra testified that Bobby "doesn't like [and has] never liked [Appellant], [and] he hates [Appellant's] guts." Sandra also testified that she is the title-owner to the house and that it is her separate property. She explained that she and Bobby were divorced in 1991 and that she was awarded the house in the property division. Bobby and Sandra eventually remarried, and he has lived at the Jokel residence since that time.

Bobby testified that he and Sandra did not "see eye-to-eye" concerning Appellant's blanket access to the house. According to Sandra, Appellant is a resident of the household: she explained that, although Appellant slept in the travel trailer, Appellant lived at and had unfettered access to the Jokel residence. Appellant had a key to the back door of the house that Bobby had provided to him. Sandra testified that Appellant "came in [the house] to eat, . . . to bathe, and [to] wash his clothes." Further, Appellant "just came in whenever he got ready to" do those things because

3

he "live[s] there." According to Bobby, he had previously asked Appellant to move out of the Jokel residence due to financial reasons; however, and despite Bobby's insistence, Sandra testified that Bobby did not have the authority to oust Appellant from the house. Moreover, Appellant testified that he has "always lived there" and stated: "that's my address, you know, on my driver's license."

At the conclusion of the guilt/innocence phase of Appellant's trial, and before the charge was read to the jury, Appellant's trial counsel requested and submitted a proposed jury instruction on the lesser included offense of aggravated assault. The trial court refused to submit the requested instruction, and the jury found Appellant guilty of the indicted offense. In his sole issue on appeal, Appellant challenges the trial court's refusal to charge the jury on the lesser included offense of aggravated assault.[1]

## II. *Standard of Review*

Whether an instruction on a requested lesser included offense is warranted requires a two-step analysis. *Safian v. State*, 543 S.W.3d 216, 219 (Tex. Crim. App. 2018); *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011) (citing *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007)); *Mathis v. State*, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). First, we must determine, as a matter of law, whether the offense to be submitted is a lesser included offense of the charged offense. *Safian*, 543 S.W.3d at 219–20; *Rice*, 333 S.W.3d at 144; *Ybarra v. State*, 621 S.W.3d 371, 379 (Tex. App.—Eastland 2021, pet. ref'd). Second, before an instruction on a lesser included offense is required, we must determine whether there is *some evidence* in the record that would permit a jury to rationally find that, if the defendant is guilty,

---

[1]We are aware of *Williams v. State*, No. PD-0477-19, 2021 WL 2132167 (Tex. Crim. App. May 26, 2021), which is currently pending on rehearing before the Court of Criminal Appeals. Because the *Williams* opinion is subject to change, its application to this case is currently unclear. For the purposes of our opinion, we will assume, regardless of *Williams*, that Appellant preserved his issue for our review.

he is guilty only of the lesser included offense. *Safian*, 543 S.W.3d at 219; *Rice*, 333 S.W.3d at 145; *Mathis*, 67 S.W.3d at 925; *Ybarra*, 621 S.W.3d at 379.

### III. *Analysis*

The first step of our analysis is accomplished by comparing the statutory elements of the lesser offense and the "statutory elements and any descriptive averments in the indictment." *Ritcherson v. State*, 568 S.W.3d 667, 670–71 (Tex. Crim. App. 2018) (citing *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016)). An offense is a lesser included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006); *Wortham v. State*, 412 S.W.3d 552, 554–55 (Tex. Crim. App. 2013). Because the first step concerns a question of law, "[w]e do not consider the evidence that was presented at trial. Instead, we consider only the statutory elements of [the offense] as they were modified by the particular allegations of the indictment . . . . We then compare them with the elements of the [requested] lesser offense . . . ." *Wortham*, 412 S.W.3d at 555 (all but first alteration in original) (quoting *Hall*, 225 S.W.3d at 536).

Here, the State concedes that aggravated assault is a lesser included offense of burglary of a habitation as it is charged in the indictment. *See* CRIM. PROC. art. 37.09. Therefore, we now turn to the second step of our analysis to determine whether there is *some evidence* that would permit a jury to rationally find that Appellant is guilty only of the lesser included offense of aggravated assault.

The second requirement is satisfied if there is "(1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense." *Ritcherson*, 568 S.W.3d at 671 (citing *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex. Crim. App. 1992)). In this regard, we consider all of the evidence

admitted at trial; if more than a scintilla of evidence exists in the record to raise the lesser offense and either negate or rebut an element of the greater offense, then the defendant is entitled to a lesser-included-offense jury instruction. *Id.* (citing *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017)); *see Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). Nevertheless, such evidence cannot be speculative; it must consist of affirmative evidence that raises both the lesser included offense and rebuts or negates an element of the greater offense. *Wortham*, 412 S.W.3d at 558. Furthermore, the evidence must be such that it establishes the lesser included offense as a "valid rational alternative to the charged offense." *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008).

In this case, the State charged Appellant with the offense of burglary pursuant to Section 30.02(a)(3). *See* PENAL § 30.02(a)(3). Under that provision, a person commits the offense of burglary if: (1) without the effective consent of *the owner*, (2) the person enters a habitation, and (3) commits or attempts to commit a felony or an assault. *See id.* A person commits the offense of assault—the third element of burglary as charged in this case—if he either (a) intentionally, knowingly, or recklessly causes bodily injury to another or (b) intentionally or knowingly threatens another with imminent bodily injury. *See id.* § 22.01(a)(1)–(2) (West Supp. 2021). An assault becomes an aggravated felony if the person "uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2). Here, Appellant argues that *some evidence* tended to show that he had *the owner's*—Sandra's— effective consent to enter the house at any time; therefore, Appellant asserts that he could not be guilty of the indicted offense of burglary but, rather, if he was guilty, he was only guilty of the lesser included offense of aggravated assault. We agree.

The Penal Code defines "[o]wner" as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *Id.* § 1.07(a)(35)(A) (West 2021). The

6

"effective consent" element of burglary encompasses "consent by a person legally authorized to act for the owner." *Id.* § 1.07(a)(19). Sandra, the title-owner of the habitation, testified that, although Appellant primarily stayed in the travel trailer behind the house, Appellant had unfettered permission to enter the house "whenever" he desired. According to Sandra, Appellant lived in her house and thus maintained the same status as a resident: Appellant possessed a key to the house and could enter and leave at his convenience, without knocking. Appellant testified similarly. Sandra explained that Bobby "never liked [Appellant]" and that she knew Bobby wanted Appellant to "move out." Further, Sandra testified that Bobby did not have the ultimate authority to demand or to advise Appellant that he must leave the Jokel residence. Therefore, the evidence is such that a rational jury could have found that (1) Appellant had the effective consent to enter the house from its *owner*, Sandra, or (2) Bobby did not have a greater right to possession of the house than Appellant but, rather, only had, at most, an equal right to possession.

Because more than a scintilla of evidence exists in the record to rebut or negate the effective-consent element of the greater offense of burglary as charged in the indictment, we hold that Appellant was entitled to the requested jury instruction on the lesser included offense of aggravated assault. *See Ritcherson*, 568 S.W.3d at 671. Therefore, the trial court erred when it refused to submit this requested instruction to the jury. In light of our holding, we must now determine whether the trial court's error requires reversal.

If jury-charge error has been preserved by proper objection, we will reverse if the error in the trial court's charge resulted in some harm to the accused. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Hardeman v. State*, 556 S.W.3d 916, 923 (Tex. App.—Eastland 2018, pet. ref'd); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). "[T]he harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting

7

for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005); *Hardeman*, 556 S.W.3d at 923. When, as in this case, the trial court's refusal to submit a lesser included offense that was requested by the defendant and raised by the evidence "[leaves] the jury with the *sole option* either to convict the defendant of the greater offense or to acquit him," some harm exists. *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995) (emphasis added). Such is this case here. Therefore, because the only option available to the jury in this case was either to convict or acquit Appellant of the indicted offense of burglary, we hold that Appellant suffered some harm.

Accordingly, we sustain Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We reverse the judgment of the trial court and remand this cause to the trial court for a new trial.

W. STACY TROTTER

JUSTICE

February 17, 2022

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

8