NO. 07-12-00041-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 26, 2012

---

JACK DANIEL MATTINGLY, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

---

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY;

NO. CR11883; HONORABLE RALPH H. WALTON, JR., JUDGE

---

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Jack Daniel Mattingly, appeals from his conviction for indecency with a child by contact[1] and his resulting eighteen-year sentence. On appeal, he complains of the trial court's admission of extraneous-act evidence. We will affirm.

Factual and Procedural History

In Hood County, appellant, his mother, his grandmother, his sister, his two nieces, his nephew, his sister's fiancé, and appellant's girlfriend, Candy, all lived

---

[1] See TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011).

together in two mobile homes connected by a breezeway. In early 2011, appellant's sister, Cassandra, saw her four-year-old son, D.M., pull down his pants and suggest that his younger sister play with and suck on his "wee-wee." Disturbed by this, Cassandra immediately corrected D.M.'s behavior and called her fiancé for help in finding out where D.M. could have learned such behavior.

Cassandra and her fiancé talked with D.M. later that evening about his behavior. D.M. expressed some fear about telling them what had happened but eventually explained that he had learned his behavior from appellant and that appellant had touched D.M.'s "wee-wee," the term D.M. used to refer to his penis. D.M. would later testify that appellant instructed him not to tell anyone about the incident and threatened to spank him if he did. Appellant's girlfriend would testify that she had "[k]inda sorta" witnessed appellant do inappropriate things to D.M., but she would not elaborate on the details of the conduct.

Cassandra and her fiancé immediately reported the matter to the proper authorities, prompting Robert Young, an investigator with the Hood County District Attorney's Office, to go to the residence to interview appellant. He recorded his interview with appellant using a hidden recording device. At the beginning of the interview, appellant denied ever having touched D.M.'s penis. Eventually, however, he did admit to having touched D.M.'s penis in the bathroom, but explained that it was incidental touching as he was helping D.M. dry off after a bath. He also explained that he has helped D.M. apply powder to his genital area whenever D.M. would complain that the area itched.

2

A heavily redacted recording of the interview was admitted into evidence as State's Exhibit 2. Appellant unsuccessfully objected to the following three portions of the recorded interview as irrelevant and substantially more prejudicial than probative: (1) discussion concerning video pornography possessed by appellant, (2) discussion of masturbation by appellant, and (3) discussion of urges of appellant to have sex with children. The trial court overruled appellant's objections but did issue a limiting instruction to the jury, limiting the purpose for which it could consider, if it did consider, certain portions of the evidence in question.

The jury ultimately found appellant guilty of indecency with a child by contact and assessed punishment at eighteen years' imprisonment. Appellant perfected appeal and brings to this Court one issue for review. Specifically, he complains that the trial court abused its discretion by admitting three specified portions of Young's recorded interview of him, contending that those cited portions were more prejudicial than probative.

Standard of Review

We review the trial court's decision to exclude or admit evidence for an abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 379 (Tex.Crim.App. 1990) (en banc) (citing Marras v. State, 741 S.W.2d 395, 404 (Tex.Crim.App. 1987)). The test for abuse of discretion is a question of whether the trial court acted without reference to any guiding rules and principles. Id. at 380. We will uphold the trial court's ruling "so long as the result is not reached in an arbitrary or capricious manner." Id.

Applicable Law

Appellant no longer challenges the cited evidence's admissibility under Rule 404(b); in his brief, he candidly concedes that the evidence was "relevant circumstantial evidence of [appellant]'s intent to arouse or gratify his sexual desire."[2] See Ochoa v. State, 982 S.W.2d 904, 908 (Tex.Crim.App. 1998); Sarabia v. State, 227 S.W.3d 320, 323–24 (Tex.App.—Fort Worth 2007, pet. ref'd). He maintains, however, that the evidence's prejudicial effect substantially outweighed its probative value. See TEX. R. EVID. 403.

The Texas Rules of Evidence favor admission of all relevant evidence at trial but do provide some exceptions that would exclude otherwise relevant and admissible evidence. See TEX. R. EVID. 401. One exception to the general rule favoring admission is found in Rule 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. When called on to analyze evidence in light of a Rule 403 objection, the trial court must balance the following considerations: (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the

_____

[2] "[I]ntent to arouse or gratify the sexual desire" is an element of "sexual contact." See TEX. PENAL CODE ANN. § 21.11(c).

4

evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Gigliobianco v. State, 210 S.W.3d 637, 641–42 (Tex.Crim.App. 2006).

Unfairly prejudicial evidence "tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission." See Casey v. State, 215 S.W.3d 870, 883 (Tex.Crim.App. 2007). We must examine each case presented to us on its own facts, strengths, and weaknesses to determine whether the extraneous transaction's probative value outweighs its inflammatory or prejudicial potential. See Turner v. State, 754 S.W.2d 668, 672–73 (Tex.Crim.App. 1988).

As a preliminary matter, we note that appellant relies heavily on Thrift v. State, 134 S.W.3d 475, 477 (Tex.App.—Waco 2004), aff'd on other grounds, 176 S.W.3d 221 (Tex.Crim.App. 2005). In Thrift, photographic evidence found in appellant's house depicting child pornography was admitted into evidence with a limiting instruction. Id. The Thrift court ultimately concluded that the evidence was inadmissible under Rule 403 because the intent to arouse or gratify was not controverted and readily inferred from the offense itself and that error in admission of the evidence was not harmless. Id. at 478–80.

To the extent that Thrift would apply to the non-photographic evidence at issue here, we note that the Fort Worth court, from which this case was transferred to this Court, has twice expressly disagreed with the reasoning of Thrift and declined to apply it. See Sarabia, 227 S.W.3d at 324–25 (disagreeing with Thrift and concluding that the element of intent to arouse or gratify sexual desire cannot be inferred simply by

5

concluding that the defendant committed the offense); White v. State, Nos. 02-07-00089-CR, 02-07-00090-CR, 2008 Tex. App. LEXIS 3977, at *15–16 (Tex.App.—Fort Worth May 29, 2008, pet. ref'd) (mem. op., not designated for publication) (same); see also Wooley v. State, No. 05-09-00455-CR, 2010 Tex. App. LEXIS 10306, at *28–30 (Tex.App.—Dallas Dec. 30, 2010, no pet.) (mem. op., not designated for publication) (expressly rejecting Thrift's reasoning in favor of rationale in Sarabia). We would further distinguish Thrift from the instant case in that intent would appear to be controverted here by statements appellant made to Young in the recorded interview and addressed in more detail below.

We will not follow the reasoning in Thrift in this case. Though this Court has not directly visited the reasoning in Thrift in a case originating within our own district, the Fort Worth court has unequivocally rejected Thrift's reasoning. That said, we decline appellant's invitation to apply Thrift as we "stand in the shoes" of a court which has expressly declined to do so in the past. See TEX. R. APP. P. 41.3 cmt. Nor will we revisit or reconsider the Fort Worth court's position on Thrift on its behalf.[3]

Analysis

Appellant complains of the following three specific portions of the recorded interview: (1) discussion of pornography possessed by appellant, (2) possible

---

[3] On the occasion that the issues raised in this case are posed to this Court in a non-transfer case of similar nature, we may revisit the Thrift/Sarabia debate to arrive at the position this Court will take on the matter as it applies to cases originating in our own district.

6

masturbation by appellant, and (3) appellant's urges to have sex with children. We will address each of the portions in turn.

Pornography discussion

During the recorded interview, Young discussed with appellant the sources and types of pornography appellant watches. In this portion of the interview, appellant explains to Young that he does watch pornography from the internet. He described the sites from which he downloaded videos and explained that he tended to search for sites that provided free pornographic videos. He also explained the type of pornography he watches. He explained that, although some of the videos do depict younger women, he explained to Young that he prefers to watch more experienced women in the pornographic videos. He denied ever having watched child pornography on the internet, and there is no mention of males–children or adult–in the pornography he described to Young.

The distinction between the type of pornography he watches and the nature of allegations lodged against appellant is noteworthy. Appellant was charged with indecency with a four-year-old boy, but the evidence at issue discussed pornography in general but indicated that appellant preferred to watch pornography that included adult women. Appellant expressed no desire to watch pornography that included children; in fact, he denied any interest in such. Given the allegations against him and the dissimilarity between them and the nature of the pornography he discussed, the probative value of this particular portion of the interview, on its own, is relatively low.

7

For similar reasons, however, the prejudicial impact of this evidence is likewise relatively low; in light of the allegations and the other evidence at trial, that appellant watches a variety of internet and video pornography is hardly a shocking piece of evidence and would not seem to suggest that the jury would arrive at its verdict on an improper basis. Further, the dissimilarity of the pornography referenced in the discussion is readily apparent, especially when Young specifically asked appellant if he ever watched child pornography and appellant responded that he does not watch it and never has. So, on the facts of this case, the tendency of this portion of the recording to confuse or distract the jury is diminished. Likewise, the risk of impressing the jury in some irrational way is diminished as well; in light of the allegations against appellant, it is unlikely that the jury will carry any irrational prejudice against appellant for possessing pornography unrelated to the allegations of indecency with a child. On that same reasoning, such evidence would not likely be given undue weight by the jury, and, to the degree it could, the jury was specifically instructed by the trial court on the limited purpose for which the jury could consider evidence of appellant's possession of pornography, if it considered it all. This portion of the recording was relatively short and did not consume an inordinate amount of time. The trial court did not abuse its discretion by overruling appellant's Rule 403 objection to this portion of the recorded interview.

Masturbation discussion

After discussing the cycle or "chain" of abuse, Young continued in that vein and asked appellant if he thought the "chain" was back together again:

8

Appellant: No, but I wouldn't want that chain.

Young: I know, but, I mean, is it getting away from you? I mean, are you in control of all that or –

Appellant: That – [i]f I can't relieve myself in the bathroom, I've got other means of relieving myself and it's that woman [appellant's girlfriend] that's in my room right now.

There is some link–albeit a tenuous one–between this evidence and the allegations then pending against appellant. Even then, though, much of the link between this evidence and the issue of intent has to come from context and implication. For that reason, the *inherent* probative value of this evidence is low; it does lend *some* probative force to the issue of intent to arouse or gratify by suggesting, through context and implication, that appellant satisfied his sexual urges for young children by masturbating. But, by the same token, the prejudicial impact is similarly low; the jury is less likely to assign significant weight to this evidence of masturbation and sexual relationship with his girlfriend when at issue is his conduct toward his four-year-old nephew. The vague reference to the "chain" being back together provides some potential for confusion by making it somewhat unclear the subject of his desires which prompt him to masturbate, but the brevity and the isolated nature of this evidence would undermine any tendency the jury might have to assign it any undue weight. Though we fail to see much value in this evidence, we cannot say that the trial court's decision to admit it over appellant's Rule 403 objection was outside the zone of reasonable disagreement.

Sexual urges discussion

Following a lengthy redaction, the interview continued:

9

Young: Do you still fight the urge sometimes?[4]

Appellant: Now, that's the everyday battle.

Young: Do you fight the urge to be with boys?

Appellant: Oh, that happened about maybe once or twice.

Young: What about fighting the urge to be with girls, young girls?  Young boys?

Appellant: Oh, I fight that every day because that's a non-stop battle.  I'm basically – my body's getting so dang weak because I'm sitting here fighting – fighting to stay alive, fighting the urge, fighting everything, man.

Young: What urge are you fighting, man?

Appellant: Fighting from doing it because I know if I end up doing it I'm going to end up seeing the big house and I won't be out until probably I'm old and gray and senile.

Young: When do these urges come on?

Appellant: You see something, hear something, that triggers it.  It can be all kinds of things.

[Discussion regarding whether Young could have a drink and seating arrangements]

Young: I mean does T.V. do it or –

Appellant: T.V., everything.  I can be driving along, driving down the – taking him to school, see something when I take – on the way to school, it will trigger it.

Young: What school?

Appellant: He goes to [school name] right up the street.

Young: Does the school trigger it sometimes?

Appellant: No.  I see too many innocent faces there.  And I'm glad there's something else that stops it, too.

Young: What's that?

Appellant: There's an officer that comes to that school every morning.

---

[4] As stated, the preceding portion of the interview was redacted but the general context suggested that "the urge" referred to at this particular point was the urge to have sexual relations with boys.

10

Young: So that stops you?

Appellant: It calms it down. It basically puts reality back into me to kill the urge.

Young: Do you think it's okay to have sexual urges toward children?

Appellant: Oh, I know it ain't okay.

Young: But you're fighting it every day?

Appellant: Yeah, and sometimes it literally kills me to fight.

Young: Do you always win?

Appellant: 99.9 percent of the time I do. The other 1.1 percent I'm in the bathroom trying to take care of it.

Young: Does that always work?

Appellant: Most of the time.

Young: What happens when it don't?

Appellant: I go for a walk. I find something else to do to get rid of it, even if I have to – I know it's illegal, but even if I have to go find some drug, street drug, not –

Young: What kind of drug do you normally get?

Appellant: Usually, there's only one drug that I know that actually calms the urge, and trust me it calms it where it's dang near gone, that's pot. I know it's illegal. I know for a fact if I got caught with it, I'd probably end up getting a dang [inaudible] report.

Young: You say "urge," what's the urge? What is the urge?

Appellant: It's like you and your sex partner, your drive goes up and it kicks it into overdrive. Well, mine goes up ten times that much.

Young: What triggers it?

Appellant: It can be all kinds of things.

Young: Is it the urge to have sex or is it the urge to have sex with a child?

Appellant: I think it's the urge just to have sex.

Young: You think it is?

11

Appellant: Oh, I know it is because all the women I've been with, they're – I don't even know if you met my mama.

Young: How many times do you have the urge, sexual urge, for a child?

Appellant: It's about once, but I can fight that off.

Young: Once . . . .

Appellant: Once. One time.

Young: Oh, a month? A week?

Appellant: A month.

Young: Like once a month?

Appellant: Yeah. It usually happens on a Wednesday. See, I understand some sex offenders how they get their charge, but I just don't understand how they couldn't control their urge because that's what it is; it's your sex drive. You're wanting it, but you're doing it to the wrong people.

Young: Is that what you've done?

Appellant: I've done it because I thought it was right when it got happened to me. It just literally kills me, but it helps me, too. Me talking about it, it calms it down. When I don't talk about it, it goes past the boiling point where I literally have to fight it off until I win. It's basically my mind's screwing with me, trying to tell me to do this when I know in my heart and in my head that I shouldn't be doing it . . . .

[Appellant indicates a change in seating position; Young acknowledges change.]

Young: . . . . Well, is that what happened with [D.M.]?

Appellant: That, I know was just to dry off – dry him off. It was nothing sexual. I didn't even have the urge.

Young: Huh?

Appellant: I didn't even have the urge.

Young: Are you sure?

Appellant: I have no doubt in my mind.

Young: Were you fighting the urge that day?

Appellant: Oh, I've already fought that urge.

Young: Was it a Wednesday?

Appellant: No, it was towards Friday or – Friday or Saturday. I don't know when it started pouring down a little bit.

Young: You now, that ice day was a Wednesday.

Appellant: And that's when I knew it was time to fight. It was either you fight – fight it off or sleep it off, and usually my body fights to even stay awake now because I've always been in so much pain before – before all this. I'm still in pain and all I want to [do] is sleep.

Young: Was you touching [D.M.] on his pee-pee wrong?

Appellant: Well, it's only going to show wrong to me, always.

Young: Are you sorry?

Appellant: I didn't – I didn't mean to. I told him, "Hey, I didn't mean to do that," but like I'm saying, all I was doing was drying him off.

Appellant contends that the prejudice of this evidence substantially outweighed its probative value because the offense was already described in D.M.'s testimony. However, we first note that defense counsel attempted to attack D.M.'s credibility and took the position that the story had been fabricated. Further, we note that, contrary to the defense of fabrication, the jury had before it appellant's own statements to Young that did finally admit that the act itself had occurred. The intent with which appellant touched D.M.'s penis, then, became a central issue, and the State's need for evidence relevant to the requisite intent increased. And, as appellant has conceded, his own description of his sexual urges toward children is relevant to the element of intent to arouse or gratify.

Appellant argues that the evidence had great potential to impress the jury in an irrational and indelible way and that the jury's impression was irrational "given the

13

activity for which appellant was on trial."[5]  We see it quite to the contrary.  With respect to this portion of the recorded interview, unlike the discussion surrounding pornography addressed above, the connection between the topic of recorded conversation and the allegations against appellant is direct and compelling.  Cf. Sarabia, 227 S.W.3d at 324 (rejecting contention that jury would be impressed in an irrational way when challenged evidence depicted activities that "were close in kind to the activity for which Appellant was on trial").  The jury was not specifically instructed that it may consider this portion of the recording for a limited purpose, if at all.  However, it was defense counsel who made the strategic decision on the record to omit any reference to the sexual urges portion of the recording from the trial court's limiting instruction so as to not risk reinforcing the validity of the evidence by repeating it to the jury.

Appellant also argues that the State spent "an excessive amount of time" developing this evidence.  While the recorded conversation is rather lengthy in itself and the State does refer to this portion of the interview–without objection–in both opening and closing arguments, we see nothing in the record that would suggest that the time to develop this evidence was excessive, especially considering that intent became a central issue at trial.  See Manning v. State, 114 S.W.3d 922, 928 (Tex.Crim.App. 2003) (observing that, even though time spent presenting challenged evidence may have been substantial, it was not possible that evidence confused the jury or distracted it from the indicted offense because it was proof of the indicted offense).  Additionally, no questions were posed to witnesses concerning the contents of the recorded interview.

---

[5] Appellant does not raise any contention regarding appellant's brief reference to smoking "pot" and makes no mention of whether or how it impacts the Rule 403 balancing test.  Therefore, we do not address that issue.

14

The trial court did not abuse its discretion by overruling appellant's Rule 403 objection to this portion of the recording.

The trial court did not abuse its discretion when it overruled appellant's Rule 403 objections to the three cited portions of the recorded conversation between Young and appellant. Accordingly, we overrule appellant's sole issue on appeal.

Conclusion

Having overruled appellant's sole issue presented on appeal, we affirm the trial court's judgment of conviction. TEX. R. APP. P. 43.2(a).


Mackey K. Hancock
Justice


Publish.

15