

# NUMBER 13-18-00194-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**JULIO ANTONIO PELAYO,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 319th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Julio Antonio Pelayo appeals his third-degree felony conviction of assault family violence, impeding breath or circulation. *See* Tex. Penal Code Ann. § 22.01(b)(2)(B). The offense was enhanced to a second-degree felony for punishment purposes following a finding that Pelayo was a repeat felony offender. *See id.*

§ 12.42(a). A jury assessed punishment at six years and nine months' confinement in the Texas Department of Criminal Justice, Institutional Division. *See id.* § 12.34(a). By two issues, Pelayo argues that the trial court abused its discretion in: (1) denying his requested jury instruction on the lesser-included offense of misdemeanor assault, and (2) admitting the State's video evidence. We affirm.

## I. BACKGROUND

On July 12, 2016, Pelayo was arrested outside his residence and charged with assaulting his common law spouse, Criscelda Campeon. Pelayo, Campeon, a law enforcement officer, and a neighbor testified at trial.

### A. Delwin Alan O'Kelly

Delwin Alan O'Kelly, Pelayo's neighbor, testified that the altercation between Pelayo and Campeon was brought to his attention by his stepson, who had burst into his bedroom screaming that he had just witnessed "somebody trying to kill a lady" outside. O'Kelly grabbed a bat and ran in the direction of the alleged disturbance. O'Kelly testified that he saw Pelayo on top of Campeon with his "hands around her neck. . . . He was choking her. . . . I thought he was killing her." O'Kelly immediately dropped the bat and rushed towards Pelayo, knocking him off Campeon. O'Kelly testified Pelayo charged at him in retaliation. With the help of his stepson, O'Kelly was able to "tackle [Pelayo] on the ground," where Pelayo remained until law enforcement arrived. Meanwhile, Campeon lied motionless nearby. "I could tell she was having a lot of problems breathing," said O'Kelly.

### B. Officer Kimberly Ramirez

Corpus Christi Police Officer Kimberly Ramirez was the first officer on the scene. Ramirez described the disturbance as "chaotic." According to Ramirez, the men were

2

still "aggressively fighting," and Pelayo appeared intoxicated. Ramirez placed Pelayo in handcuffs while she attempted to ascertain what happened.

Campeon appeared disheveled and was covered with grass stains. Ramirez testified that she did not observe any visible signs of injury around Campeon's neck. Ramirez spoke with each of the parties involved and obtained a copy of a cell phone video recording taken by O'Kelly's stepson. The video depicted Pelayo grabbing Campeon by her hair, maintaining hold as he pulled her to the ground and jerked her back and forth. The video did not capture the initial confrontation between Pelayo and Campeon, and it did not show what transpired after O'Kelly became involved. Ramirez thereafter placed Pelayo under arrest.

While processing Pelayo at the jail, Ramirez was asked by the jailers what Pelayo was being booked for. In response, Ramirez said, "Assault-family violence; choking." Unprompted, Pelayo said, "That's my woman, and I do what I want."

## C. Campeon

Campeon testified that she and Pelayo had been drinking together earlier that morning. Campeon then took a four-hour nap, and Pelayo left the residence. Campeon was outside cleaning the yard when Pelayo arrived back home, looking "very angry." As he approached, Campeon said she "could tell he was going to attack." Campeon grabbed a nearby stick off the ground and tried to strike Pelayo as he "came towards [her] hitting." Pelayo took the stick out of Campeon's hands and threw it. Campeon testified that Pelayo then:

> grabbed me by my hair. . . . [He] jerked me all over the yard by my hair. . . .
> He grabbed my arm and placed it over my neck. . . . He had me pinned
> with my own arm and leg over my throat and he was putting pressure over
> my body. . . . I couldn't breathe, my body was—it was kind[] of weird[;] my

3

body was yelling. I was making a weird noise, I remember, and I passed out.

The State moved to admit the video recording of Pelayo dragging Campeon by her hair. Pelayo objected, arguing the evidence was inadmissible under Rule 403 because it did not give the jury "an adequate representation of what actually took place." The exhibit was admitted notwithstanding Pelayo's objections and played for the jury.

During cross examination, Campeon reiterated that she grabbed the stick in self-defense because she "already knew" Pelayo was going to attack her. According to Campeon, Pelayo had threatened her over the phone prior to his arrival. "[He] had already told me he was going to come and smother [sic] my life apart."

Campeon was questioned regarding an incident in 2014, which resulted in Pelayo's hospitalization and Campeon's arrest. Campeon said her actions in 2014 had been in response to Pelayo "sucker punch[ing]" her. Campeon testified that she had "black[ed] out," and while "passed out, he drag[ed] [her] body to the front yard." Campeon woke up and threw rocks at a window, intending to damage the couple's property, and she inadvertently struck Pelayo.

## D.    Pelayo

Pelayo depicted Campeon as a violent, unstable individual, and he attributed her violent tendencies to her excessive alcohol and drug use. Pelayo testified that Campeon was "a good person when she doesn't drink or she doesn't use drugs. But when she starts to do that, she turns into another person."[1]

---

[1] During direct examination, Pelayo struggled to answer the questions directly:

Q.    The video shows you pulling her hair and dragging her around the backyard.

A.    Yes.

4

On July 12, Pelayo said he initially left the residence because the two had been drinking, and Campeon had started becoming aggressive. Several hours later, Campeon called him repeatedly, requesting that he come home. Pelayo said as soon as he arrived, Campeon tried to assault him with a stick. Pelayo testified that he was able to disarm Campeon and maintained that his defensive actions were corroborated by the video shown. Pelayo, however, explicitly denied choking Campeon.

Then, during cross-examination, when asked whether he "choke[d] or assault[ed]" Campeon, Pelayo responded, "I don't call it assault. I just had her from the hair, and that was it." Pelayo conceded that "there [was] no danger of anything" when Pelayo had Campeon by the hair on the ground, and he was unable to explain why he continued if there was no danger, testifying only that "[i]t's a thing that only that person that passes through this feels it."

Pelayo reemphasized that he was the "victim" in this case and claimed that O'Kelly "trespassed on [his] property to hit [him] and beat [him] with a bat" for no reason. Pelayo said O'Kelly was lying when he swore that he witnessed Pelayo choking Campeon.

---

Q. How and why did that happen?

A. She's just frustrated me all through my life. I've tried to live a good life with her, she doesn't want to leave the drinking.
. . . .

Q. After you got back home how did she become aggressive with you?

A. Yes.

Q. How?

A. Just a woman. She was just angry because I left. Something like that. . . .

Q. All right. But I'm speaking specifically about the confrontation that the two of you had when you got back to the house, how did she become aggressive to you then?

A. Yes. Just kind of—just angry.

5

The trial court granted Pelayo's request for a self-defense instruction and denied his request for a lesser-included offense instruction. A jury returned a guilty verdict. This appeal followed.

## II.  JURY CHARGE ERROR

### A.  Standard of Review & Applicable Law

A trial court has a duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015).

Analysis of an alleged jury charge error requires consideration of dual inquiries: (1) whether error existed in the charge; and (2) if so, whether sufficient harm resulted from the error to compel reversal. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (citing *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005)). If we determine that no error occurred, our analysis ends. *Id.*

Similarly, we employ a two-part test to determine whether a trial court abused its discretion in denying a requested charge on a lesser-included offense—the alleged error here. *Ritcherson v. State*, 568 S.W.3d 667, 670 (Tex. Crim. App. 2018); *see Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09 (defining the requirements for a lesser-included offense). First, we compare the statutory elements as alleged in the indictment with the statutory elements of the requested lesser-included offense to determine whether the lesser-included offense is included within the proof necessary to establish the charged offense. *Ritcherson*, 568 S.W.3d at 670–71; *Bullock*, 509 S.W.3d at 924. Next, we review the entirety of the record to determine if there exists "more than a scintilla" of affirmative evidence, regardless of whether controverted or credible, from which a rational jury could find the defendant guilty

6

of only the lesser offense. *Roy v. State*, 509 S.W.3d 315, 317 (Tex. Crim. App. 2017); *see Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012) ("While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense."). This requirement is met if:

> there is (1) evidence that directly refutes or negates other evidence establishing the greater offense and raises the lesser-included offense or (2) evidence that is susceptible to different interpretations, one of which refutes or negates an element of the greater offense and raises the lesser offense.

*Ritcherson*, 568 S.W.3d at 671 (citing *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex. Crim. App. 1992)).

## B.    Analysis

Appellant requested an instruction on simple assault, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.01(b). Assault family violence impeding breath or circulation is defined under § 22.01 as an assault [2] requiring additional proof of commission: (1) against a family member, and (2) by means of "impeding the normal breath or circulation of the blood of the person by applying pressure to the person's throat

---

[2]  A person commits assault if the person:

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE ANN. § 22.01(a).

or neck or by blocking the person's nose or mouth . . . ." *See id.* § 22.01(b)(2)(B). Accordingly, misdemeanor assault is a lesser-included offense because it is included within the proof necessary to establish assault family violence by impeding breath or circulation. *See Ritcherson*, 568 S.W.3d at 671; *see generally Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016) (recognizing that simple assault may be enhanced to a third-degree felony if it is committed against a family member by impeding breath or circulation); *see, e.g.*, *Hardeman v. State*, 556 S.W.3d 916, 922 (Tex. App.—Eastland 2018, pet. ref'd) (recognizing the same in its exclusion of a requested jury charge analysis).

We now consider whether there is some evidence from which a rational jury could find Pelayo guilty of only the lesser-included offense.[3] *See Ritcherson*, 568 S.W.3d at 671. Pelayo asserts in his brief that the evidence establishes he was guilty only of the lesser-included offense because the jury was free to disbelieve the testimony that Campeon's normal breathing or circulation of blood was impeded and believe instead that Pelayo only "caused pain to [her] neck." Specifically, Pelayo argues that Campeon's testimony that he "pushed her arm across her throat and that's what caused some injury," was some evidence of misdemeanor assault. *See id.* However, it is "not enough that the jury may disbelieve crucial evidence pertaining to the greater offense but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed*

---

[3] Arguably, the State provided evidence at trial of two separate assaults: (1) Pelayo dragging Campeon by the hair, a misdemeanor not charged, and (2) Pelayo impeding Campeon's breath by applying pressure to her throat, the charged felony offense. Neither party argues that evidence of the "dragging" assault is the basis for a lesser-included offense.

8

*v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)).

Although Pelayo points to no other evidence in support of his position, we independently consider the following evidence admitted at trial: (1) Campeon's testimony, (2) Pelayo's unequivocal denial that he choked or assaulted Campeon, and (3) Officer Ramirez's testimony that there were no marks on Campeon's neck indicating injury. *See Bullock*, 509 S.W.3d at 925 ("The entire record is considered."). While testimony by Pelayo and Officer Ramirez provided some affirmative evidence to directly refute or negate the alleged greater offense (that Campeon was not choked), we find no affirmative evidence raising the lesser-included offense (that Campeon was assaulted in another manner). *See Ritcherson*, 568 S.W.3d at 671.

Despite Pelayo's characterization of Campeon's testimony, Campeon unequivocally testified Pelayo's actions were forceful enough to impede her breath or circulation.[4] *See Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *cf.*

---

[4] Campeon's testimony, in relevant part, reads as follows:

A.     He reached out for my hair and he jerked me all over the yard by my hair.

Q.     Okay. All right. What else did he do to you?

A.     After a few minutes of that happening, I was exhausted. I was exhausted, and I am disabled. And he had me tossed on the floor, on the ground, and I tried to swing at him. He grabbed my arm and placed it over my neck, and I tried to kick him, he grabbed my leg and pinned it over my shoulder, my neck, and had me pinned with my own arm and leg over my body.

Q.     Did you ever have a hard time breathing?

A.     Yes.

Q.     Okay. Who caused you to have a hard time breathing?

A.     He had me pinned with my own arm and leg over my throat and he was putting pressure over my body.

Q.     So the defendant, Julio Pelayo, is using his body or –

9

*Hardeman*, 556 S.W.3d at 921–23 (holding trial court erred in denying lesser-included offense of assault where the victim denied choking and the evidence conflicted on whether the appellant grabbed the victim's neck or merely her shirt). There was no affirmative evidence of a lesser-included offense conduct here; moreover, Pelayo denied assaulting Campeon in any manner.[5] *See Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001) ("A defendant's own testimony that he committed no offense, or testimony which otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser-included offense."). Therefore, there was no evidence which would lead a rational jury to conclude that if Pelayo was guilty, he was only guilty of the lesser-included offense of misdemeanor assault. *See Ritcherson*, 568 S.W.3d at 671 (requiring that there be evidence to negate the greater offense "and raise[]the lesser-included offense"); *see also Jennings v. State*, No. 09-11-00665-CR, 2013 WL 2732582, at *3

---

[Objections and ruling]

Q. . . . Where exactly on your body did he choke you? If you can show the jury where on your neck area.

A. He had my arm complete over, this leg over and pinned. And his body was over me, holding me down with my own arm and leg over my throat.

Q. Now, as your experiencing this assault, are you talking [or] taking any type of video of it, or are you experiencing it in a panic?

A. I couldn't breathe, m[y] body was—it was kind[] of weird[;] my body was yelling. I was making a weird noise, I remember, and I passed out.

[5] Pelayo testified to the following:

Q. Did you intend to harm her in any way?

A. I've never hurt her.

Q. But again, we've seen the video. We saw you pulling her around by her hair.

A. That's it. But to hurt somebody is to hit them, to punch them, beat her, or choke her, like they're saying. That's just like a fight, like between women. I just had her like that so she wouldn't hit me, just like that.

10

(Tex. App.—Beaumont June 12, 2013, no pet.) (mem. op., not designated for publication) (affirming trial court's denial of a lesser-included offense instruction whether the "only evidence in the record concerning the force applied in the incident shows that [appellant] choked [complainant] with sufficient force to affect her breathing or her blood flow").

Accordingly, we conclude the trial court properly denied Pelayo's request to instruct the jury on a lesser-included assault. *See Ritcherson*, 568 S.W.3d at 671. We overrule Pelayo's first issue.

### III.     ADMISSIBILITY OF EVIDENCE

By his second issue, Pelayo avers that the trial court erred by admitting the State's evidence of a cell phone recording over his Rule 403 objection.

### A.     Standard of Review & Applicable Law

We review the trial court's evidentiary rulings for abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will not reverse the trial court's decision on admissibility of evidence unless it falls outside the zone of reasonable disagreement. *Id.*

Under Rule 403, the trial court may exclude evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Probative value" refers to the inherent probative force of an item of evidence—specifically, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Gigliobianco v. State,* 210 S.W.3d 637, 641 (Tex. Crim. App. 2006); *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009); *Kappel v. State,* 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "'Unfair prejudice'

11

refers to a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco,* 210 S.W.3d at 641. In *Gigliobianco*, the court of criminal appeals outlined several factors of which a trial court must balance when conducting a Rule 403 analysis. *Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018) (citing *Gigliobianco*, 210 S.W.3d at 641).

Specifically, we weigh the inherent probative force of the proffered item of evidence along with the proponent's need for that evidence against: (1) any tendency of the evidence to suggest a decision on an improper basis, (2) any tendency of the evidence to confuse or distract the jury from the main issues, (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id.*

## B.    Analysis

Pelayo argues, without citation to the record or applicable case law,[6] that the trial court erred in admitting an "incomplete, misleading video" which "biased" the jury against his theory of the case. The State contends that, although only depicting an incident preceding the charged offense, the video was probative because it (1) evidences how Pelayo escalated the altercation even after Campeon had become subdued; and (2) corroborates Campeon's and O'Kelly's testimony regarding events prior to Pelayo's commission of the felony assault.

---

[6] *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (observing that "an appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record"). Nonetheless, out of an abundance of caution and within our sole discretion, we choose to address this issue.

We acknowledge that the contents of the recording were prejudicial to Pelayo. However, Rule 403 is only concerned with "unfair" prejudice. *Gonzalez*, 544 S.W.3d at 373. The trial court could have reasonably concluded that the inherent probative force of the videos was considerable, because Pelayo actively sought to cast doubt on the credibility of the State's witnesses, including their credibility with respect to the events captured on camera. *See Gigliobianco*, 210 S.W.3d at 642; *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) (providing that Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial); *see also Knight v. State*, 457 S.W.3d 192, 204 (Tex. App.—El Paso 2015, pet. ref'd) (holding admission of evidence was proper where evidence was "probative and necessary for the State to rebut Appellant's contention").

Though Pelayo asserts that the recording "impressed the jury in an irrational way," we note that the footage was of poor quality, was shot from a distant and partially obstructed vantage point, and it was without graphic detail that could enflame the jury. *See Ripkowski v. State*, 61 S.W.3d 378, 392 (Tex. Crim. App. 2001) (noting that a video need not be excluded simply because it reflects the gruesomeness or reality of the crime). The video is approximately fifty seconds in length and did not take an inordinate amount of time to present. *Cf. Jackson v. State*, 314 S.W.3d 118, 129 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding a trial court erred in admitting evidence where a "substantial amount of time was spent" on a horrific matter which the appellant was undisputedly not involved in); *see also Hackler v. State,* No. PD–1400–06, 2006 WL 5381379, at *3 (Tex. Crim. App. Feb. 6, 2008) (Keasler, J., concurring) (not designated for publication) (explaining that video that was approximately one and half minutes long did not take inordinate amount of time to present). Moreover, what was captured and depicted in the

13

video was no more prejudicial than the witnesses' description of what transpired.  *See Mattingly v. State*, 382 S.W.3d 611, 615 (Tex. App.—Amarillo 2012, no pet.) (finding that the prejudicial impact and likelihood of jury confusion regarding evidence that appellant watches a "variety of internet and video pornography" was relatively low in light of the allegations of indecency with a child and other evidence at trial).   We further observe that the video did not have a tendency to confuse the issues or mislead the jury as it was not technical in nature.   *See Gigliobianco*, 210 S.W.3d at 641 (noting that scientific evidence is the type of that "might mislead a jury that is not properly equipped to judge the probative force of the evidence").

Accordingly, the record supports the trial court's conclusion that the probative value of the video was not substantially outweighed by the danger of unfair prejudice. *See Gonzalez*, 544 S.W.3d at 373.   We conclude that the trial court's decision to admit the video was within the zone of reasonable disagreement and was not an abuse of discretion.   *See id.*   We overrule Pelayo's second issue.

## IV.  CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 16th
day of January, 2020.

14