

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00170-CR

_____

NICHOLAS NAHRUE JONES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 48127-B

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

After a jury found Nicholas Nahrue Jones guilty of the offense of family-violence assault by impeding breath or blood, it assessed his punishment at thirty years' imprisonment.[1] Jones appeals, maintaining that the trial court erred by not instructing the jury on the lesser-included offense of Class A misdemeanor assault, that he was egregiously harmed when the trial court omitted a sua sponte extraneous-offense instruction in its jury charge, and that he received ineffective assistance of counsel.

We affirm the trial court's judgment because (1) Jones was not entitled to a lesser-included-offense jury instruction, (2) Jones was not entitled to an extraneous-offense jury instruction, and (3) Jones's counsel was not ineffective as Jones asserts.

Almost two hours after midnight, in the fall of 2018, Jonathan Prior, a deputy for the Gregg County Sheriff's Office, responded to a disturbance on Jamerison Road. When he arrived at the residence, Prior saw Teresa Ephraim, Jones's ex-wife but still his housemate,[2] underneath the carport. Prior testified that Ephraim looked "scared." According to Prior, Ephraim told him that Jones had choked her until she could no longer breathe. Prior said that Ephraim had "redness around her neck and scratch marks on the back of her neck, as well as the right side, the front area of her neck as well." Prior said that the scratches "looked new." Prior stated that the marks on Ephraim's neck showed more redness as time passed, another indication that she had been strangled.

---

[1]Jones's sentence was enhanced by two prior felony convictions. *See* TEX. PENAL CODE ANN. § 12.42.

[2]Ephraim and Jones continued living together after they divorced.

Yet, when Prior spoke with Jones that night, Jones denied the allegations against him. Jones told Prior that he and Ephraim "were in bed and that she had taken up space in the bed and believed that she had gotten mad at him." According to Prior, Jones said that "nothing physical occurred between them." He also told Prior that Ephraim was an alcoholic and that "she drank too much. . . ."[3] Jones denied to Prior that he had been using drugs or drinking alcohol that night. Contrary to Jones's assertion, however, Prior believed that both Jones and Ephraim were under the influence of alcohol and that Jones had possibly been using drugs. Prior said that the couple's children were in the home along with a grandparent.[4] After determining that Ephraim's injuries were consistent with having been choked, he placed Jones under arrest around 2:00 a.m.[5] Jones was subsequently indicted for the offense of family-violence assault by impeding breath or blood.

At trial, Ephraim explained that the State had served a subpoena on her, requiring her to come to court and testify. Ephraim said that, following the incident, she went to the district attorney's office to sign an affidavit of nonprosecution in an effort to drop the charge against Jones.[6] Ephraim told the prosecutor "that the incident that occurred was taken out of proportion

---

[3]Jones explained to Prior that Ephraim had been at a hotel with her boyfriend, that Jones subsequently went and got Ephraim, and that "she was all drunk and stuff."

[4]Jones's children, D.J. and Q.J., were both seventeen years old at the time of the incident. That evening, Jones gave Prior consent to talk to both of them. Q.J. told Prior that Jones had thrown "something" at his head. Q.J. said that Jones told him that "they were plotting against [him]." According to Q.J., Ephraim said that Jones had choked her, but he did not see the physical altercation occur because he was in a different room than his parents were. D.J. said that he heard Ephraim tell Jones to "stop."

Yet, at trial, Q.J. stated that he could not recall much of the incident, or he maintained that he did not know what had occurred that evening.

[5]Prior said that he found no injuries on Jones's person.

[6]In her affidavit of nonprosecution, which was filed on November 28, Ephraim stated,

3

pretty much." Ephraim admitted that she had been the person who called 9-1-1 the night of the incident. Yet, at trial, Ephraim said she was not sure if she had told Prior that Jones had choked her or that Jones "g[o]t on [her], and [she] couldn't move and [she] couldn't breathe."

When asked to recall the incident in her own words at trial, Ephraim testified, "I'm not sure what happened exactly. I was asleep. And there was something that I'm not trying to speak openly about because it was a sexual encounter, so it's just embarrassing to say it. So I'm not saying it." Ephraim then stated that she woke up and Jones was on top of her, and she got scared. Ephraim admitted that she was "very specific" about Jones's behavior the day the incident occurred; however, she remained adamant that she "thought something else was going on -- and that's not what was going on."

In addition, Ephraim was shown a photograph that had been taken the night of the incident, showing an injury to her neck. According to Ephraim, she was not sure if she had gotten the injury that night or if she had gotten it before that evening. Ephraim explained that, although the couple frequently argued, she did not consider herself a victim. She also said she could "pretty much take care of [herself]." Ephraim stated that she did not want Jones to be prosecuted for the charged-offense, "[b]ecause he didn't do anything wrong to be punished for." According to Ephraim, on the night of the incident, she told the officers repeatedly that she was not sure if she wanted to press charges against Jones.

---

It was a huge mistake that [Jones] was arrested. He was not trying to hurt me, he was being overly aggressive in a sexual way and I didn't know what he was doing, and it scared me because we don't do things that way. I do not want this case pursued, and there is no reason for it to go to court. I'm sorry for the misunderstanding. Thanks, sincerely.

Ephraim conceded that she had been twice arrested for family-violence assault, with Jones being the victim on one of those occasions.[7] In that case, Jones was also arrested. The other incident occurred in 2018 and involved Ephraim's ex-boyfriend. Ephraim was also asked about Jones's prior criminal history. According to her, Jones had a felony drug conviction and several convictions for the offense of driving while intoxicated (DWI).

The State offered, and the trial court admitted, a recording of Prior questioning the parties the evening of the incident.[8] Contrary to her testimony at trial, at the scene, Ephraim told Prior that "[Jones] choked [her] and [she] could not breathe." Ephraim said, "He just grabbed me . . . and he choked me and he put all his weight on me, and I could not breathe." Ephraim said that Jones had been disturbing everybody in the house, making it impossible for people to sleep. "He was just waking everybody up." "And all of the sudden, he just grabbed me by my throat. He just held me down, then he started putting all his weight on me, and I couldn't breathe." When asked if she wanted to pursue charges against Jones, Ephraim said, "I didn't know if he was trying to kill me or what he was doing." She then told Prior that she wanted to pursue charges. "Because he could have killed me . . . because I couldn't breathe." Ephraim also told the officer that she wanted to obtain a protective order against Jones.

*(1)*      *Jones Was Not Entitled to a Lesser-Included-Offense Jury Instruction*

Jones contends that the trial court erred when it refused to include in its jury charge an instruction on the lesser-included offense of misdemeanor assault. We disagree.

---

[7]Ephraim believed the incident occurred around 2006.

[8]Prior was wearing a police body camera.

5

To properly preserve any alleged jury charge error relating to the exclusion of an instruction on a lesser-included offense, the defendant must present either a timely objection to the charge or a requested charge.[9] *Boles v. State*, 598 S.W.2d 274, 278 (Tex. Crim. App. 1980).

The record in this case shows that, outside the presence of the jury, the court asked the parties if they had reviewed the proposed jury charge, to which Jones answered,

> I have, Your Honor. I have one objection that I would like to -- a lesser-included offense put in there of assault family violence, a non-impeding breath. She testified she doesn't know how -- there could have been a mistake. The fact in there -- I know it's intentionally, knowingly, or recklessly. Because of the mistake issue, in which she can't recall why, she said that she continues to say in her testimony, "I don't know, I don't know, I don't know." So that's the reason I'm requesting a lesser-included charge.

Rule 33.1 of the Texas Rules of Appellate Procedure requires that a complaint be made "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). "No talismanic words are needed to preserve error as long as the court can understand from the context what the complaint is." *Clark v. State*, 365 S.W.3d 333, 337 (Tex. Crim. App. 2012). It is clear from the record that Jones sought a jury instruction on the lesser-included offense of misdemeanor assault.

---

[9]Our review of an alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we determine whether error occurred and then "determine whether sufficient harm resulted from the error to require reversal." *Id.* at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The level of harm that must be shown as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. When a proper objection is made at trial, a reversal is required if there is "some harm" "calculated to injure the rights of defendant." *Id.* But, when the defendant fails to object to the charge, we will not reverse the jury-charge error unless the record shows "egregious harm" to the defendant. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza*, 686 S.W.2d at 171). In determining whether the error caused egregious harm, we must decide whether the error created such harm that the appellant did not have a "fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19; *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171; *Boones v. State*, 170 S.W.3d 653, 660 (Tex. App.—Texarkana 2005, no pet.). "Neither the State nor the defendant has a burden to prove harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

6

The appropriate test to be applied in determining whether an accused is entitled to an instruction on a lesser-included offense is that (1) the lesser-included offense must be included in the proof necessary to establish the offense charged and (2) some evidence must exist that would permit a jury rationally to find that, if the accused is guilty, he is guilty only of the lesser offense. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Jones v. State*, 241 S.W.3d 666, 670 (Tex. App.—Texarkana 2007, no pet.). The evidence must be evaluated in the context of the entire record, and the reviewing court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

A person commits the offense of assault if he or she "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1) (Supp.). Family-violence assault by occlusion is assault with two additional requirements: that the victim be a family member and that the defendant must have committed the assault by impeding the blood or breath of the victim.[10] TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (Supp.). "Accordingly, simple assault is a lesser included offense because it is included within the proof necessary to establish assault family violence by strangulation." *Hardeman v. State*, 556 S.W.3d 916, 921 (Tex. App.—Eastland 2018, pet. ref'd) (citing *Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016)).

---

[10]In its indictment against Jones, the State alleged that, on or about October 22, 2018, Jones

> did then and there intentionally, knowingly, or recklessly cause bodily injury to Teresa Ephraim, a member of the said Defendant's family and household and with whom the said Defendant has had a dating relationship, as described by Chapter 71, Family Code, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of blood of the said Teresa Ephraim by applying pressure to the throat or neck and blocking the nose or mouth of said Teresa Ephraim.

Next, we must determine whether there was evidence in the record to show that the jury could have rationally acquitted Jones of family-violence assault by impeding breath or blood, while convicting him of simple assault. *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). "The evidence supports an instruction on a lesser-included offense if it permits a rational jury to find the defendant guilty only of the lesser-included offense." *Goad v. State*, 354 S.W.3d 443, 448 (Tex. Crim. App. 2011). In other words, there must be some affirmative evidence that is germane to the existence of the lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). "Affirmative evidence," though, can exist in the absence of direct evidence. *Goad*, 354 S.W.3d at 448 (finding circumstantial evidence of intent to be "affirmative evidence"). A witness's answers during cross-examination may create conflicts in testimony. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007). The record need only contain "more than a scintilla" of affirmative evidence, and we may not consider the credibility of the evidence. *Goad*, 354 S.W.3d at 446; *Schmidt v. State*, 278 S.W.3d 353, 364 (Tex. Crim. App. 2009).

Here, Jones contends that there was sufficient evidence to show that he was not guilty of the charged offense but was, instead, guilty of the offense of misdemeanor assault. In support of his argument, Jones directs us to the following evidence: (1) Ephraim's testimony that she was not sure what had occurred during the incident, (2) Ephraim's testimony that she was not sure if she had had trouble breathing, (3) Ephraim's testimony that she signed an affidavit of nonprosecution, stating that Jones's arrest was due to a misunderstanding, (4) the statement in Ephraim's affidavit that Jones did not do anything to warrant punishment, (5) Ephraim's testimony

that she was unsure whether the scratch on her neck was a recent injury, and (6) Ephraim's statement to the 9-1-1 operator that she did not have a bruise on her neck. Despite Jones's contentions, this evidence does not support a finding that Jones was guilty of only misdemeanor assault and not guilty of family violence assault by impeding Ephraim's breath or blood.

In further support of Jones's argument that a jury could have convicted him of only misdemeanor assault, he directs us to the statement in Ephraim's affidavit that Jones was not trying to hurt her, but was being only sexually aggressive. Jones maintains that "there was more than a scintilla of evidence that [he] may have intentionally, knowingly, or recklessly caused Ephraim bodily injury by positioning himself over her in a sexual encounter. . . . " We disagree.

Jones's contention would have required the jury to find that the injury to Ephraim's neck[11] was caused when Jones strayed from the couple's usual sexual practice. Yet, there was no evidence to support that theory. Although Ephraim stated that Jones was being overly-aggressive in a sexual manner, she never stated, either at the scene or during trial, that Jones's grabbing her neck was part of being sexually aggressive. In fact, the only explanation Ephraim gave was that she woke up and Jones was "over [her]" and that his presence scared her. In that particular version of events, Ephraim was not physically injured at all; instead, she placed the blame squarely on herself, maintaining that she "misunderstood" or was confused by Jones's sexual behavior. Moreover, the jury heard Jones's statement that *nothing* physical happened that evening. According to Jones, he did not assault Ephraim by choking her or by any other action. Considering the record, the jury

---

[11]The only bodily injury referred to on the night of the incident, or during trial, was an injury to Ephraim's neck caused by Jones choking her. There was no evidence that Ephraim sustained any other physical injury to her body.

had two options: to either find Jones not guilty of the charged-offense or to find him guilty of it based on Prior's testimony and Ephraim's statements at the scene. A misdemeanor assault conviction under the evidence presented to the jury was not an option.

Because we find no evidence in the record to show that the jury could have rationally acquitted Jones of family-violence assault by impeding breath or blood, while convicting him of misdemeanor assault, the trial court did not err in denying a lesser-included instruction on the charge of misdemeanor assault.

We overrule this point of error.

*(2)    Jones Was Not Entitled to an Extraneous-Offense Jury Instruction*

Jones also contends that the trial court erred when it failed to include in its jury charge an extraneous-offense instruction relating to the jury's limited use of Jones's prior convictions, which included, among others, several convictions for DWI, theft, evading arrest or detention, and a felony drug conviction. Yet, Jones did not object to the court's failure to include such an instruction at trial.

We find the trial court did not err in omitting an extraneous-offense instruction during the guilt/innocence phase of Jones's trial. In *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007), the Texas Court of Criminal Appeals explained that, while Article 37.03 of the Texas Code of Criminal Procedure requires the trial court to "sua sponte instruct the jury at the punishment phase . . . that the State must prove any extraneous offenses beyond a reasonable doubt," a defendant is not necessarily entitled to such a limiting instruction regarding extraneous offenses in the guilt/innocence charge. *Id*. at 252. The court explained,

10

> [I]f a defendant does not request a limiting instruction under Rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge. The doctrine is a sensible one because otherwise a jury might sit through most of a trial under the mistaken belief that certain evidence is admissible for all purposes when, in fact, it is not. Once evidence has been admitted without a limiting instruction, it is part of the general extraneous offense evidence and may be used for all purposes . . . . Taking the cases together, then, a limiting instruction concerning the use of extraneous offense evidence should be requested, and given, in the guilt-stage jury charge only if the defendant requested a limiting instruction at the time the evidence was first admitted.

*Id*. at 251 (footnotes omitted) (citations omitted).

Here, Jones failed to object to any of the extraneous-offense evidence, to request a limiting instruction at the time the evidence was admitted, to request a limiting instruction in the jury charge, and to request any burden-of-proof instruction concerning the extraneous offenses in the jury charge. *See id*. at 253. Moreover,

> [e]ven if a limiting instruction on the use of an extraneous offense would have been appropriate here under Rule 404(b), the trial judge had no duty to include one in the jury charge for the guilt[/innocence] phase because appellant failed to request one at the time the evidence was offered. Because the trial judge had no duty to give *any* limiting instruction concerning the use of an extraneous offense in the guilt-phase jury charge, it naturally follows that he had no duty to instruct the jury on the burden of proof concerning an extraneous offense.

*Id*. at 254 (footnote omitted) (citation omitted). Accordingly, there was no error.

We overrule this point of error.

*(3)* *Jones's Counsel Was Not Ineffective as Jones Asserts*

Jones also complains that he received ineffective assistance of counsel at trial. To support allegations that trial counsel was ineffective, an appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness

11

and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The Texas Court of Criminal Appeals has said, "Trial counsel 'should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.'" *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Where an appellate record is silent as to why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Direct appeals often present a limited record for review of the effectiveness of trial counsel. *Thompson*, 9 S.W.3d at 814 (citing *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998)). One way to obtain evidence of counsel's trial strategy or other matters in the direct appeal record is through a motion for new trial.[12] *Motley v. State*, 773 S.W.2d 283, 290 (Tex. Crim. App. 1989) (evidence relating to counsel's trial strategy appeared in record because hearing on motion for new trial was held on issue of ineffective assistance). Moreover, when a reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that counsel has performed deficiently." *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). "[W]hen a party raises an ineffective assistance of counsel claim for the first time on appeal, the defendant must show that 'under prevailing professional norms,'

---

[12]Another way to develop a proper record is through a hearing in a habeas corpus collateral attack. *See generally* TEX. CODE CRIM. PROC. ANN. arts. 11.01–.45 (Supp.).

*Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did nor no competent attorney would fail to do what trial counsel failed to do." *Parmer v. State*, 545 S.W.3d 724, 728 (Tex. App.—Texarkana 2018, no pet.) (citing *Andrews*, 159 S.W.3d at 102).

"The second *Strickland* prong, sometimes referred to as the 'prejudice prong,' requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Lampkin v. State*, 470 S.W.3d 876, 897 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The appellant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813. Allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813). The *Strickland* text "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in judgment)). "A failure to make a showing under either prong defeats a claim of ineffective assistance." *Parmer*, 545 S.W.3d at 728 (citing *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003)).

Jones maintains that "the primary deficiency of trial counsel's conduct was his own discussion of Appellant's extraneous offenses during the guilt[/]innocence phase." Jones states that counsel was ineffective because he elicited testimony from Ephraim regarding Jones's prior criminal history and he failed to object to the State's line of questioning during its redirect of

13

Ephraim. Jones also points out that counsel included a recitation of his criminal history during his closing argument. Specifically, Jones complains of counsel's statement to the jury, "You know she's been arrested for this before. You know he's been arrested." Jones also complains that his counsel failed to object to the introduction of his prior convictions as extraneous offenses and that he failed to request a limiting instruction on that testimony.

Assuming, without finding, that Jones's counsel's actions amounted to deficient performance, Jones has not met the second requirement of *Strickland*, that is, to demonstrate that, "but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Lampkin*, 470 S.W.3d at 897. This is so because the State presented a plethora of evidence to support the jury's finding of guilt. First, the jury heard Ephraim's version of events the night of the incident and directly after the incident happened. Ephraim informed Prior in very clear terms that Jones (1) grabbed her by the throat, (2) choked her, (3) put all of his weight on her to the point she could not breathe, and (4) held her down. In addition, Ephraim told Prior that she questioned whether Jones was trying to kill her. Moreover, Jones's actions prompted Ephraim to tell Prior that she wanted to obtain a protective order against Jones. Further, Q.J. and D.J. also spoke with Prior the evening of the incident. Q.J. told Prior that Ephraim told him that Jones had choked her, and D.J. said that he heard Ephraim tell Jones to "stop." Lastly, Prior testified that he recognized a mark on Ephraim's neck that appeared to get redder the longer it was there, indicating that the injury had just occurred. Although Ephraim and Q.J. changed their testimony in Jones's favor during trial, the jury was allowed to believe all of their testimony, some of their testimony, or none of their testimony. *See Fuentes v. State*, 991

14

S.W.2d 267, 271 (Tex. Crim. App. 1999). Apparently, the jury believed the version of events Ephraim gave the night of the incident. Considering all of the evidence in its totality, the fact that Jones's counsel referred to Jones's prior convictions during trial does not result in a reasonable probability that the jury's verdict against Jones would have been different.

That said, Jones did file a motion for new trial, but he did not include a claim of ineffective assistance of counsel. Thus, the record does not indicate why counsel chose to represent Jones in the manner he did. The ineffectiveness of counsel is a matter that must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Smith v. State*, 51 S.W.3d 806, 813 (Tex. App.—Texarkana 2001, no pet.). Although we could speculate concerning the representation by Jones's attorney, "[i]neffective assistance of counsel claims are not built on retrospective speculation; they must be 'firmly founded in the record.'" *See Bones*, 77 S.W.3d at 835. In the absence of such a record, and in the lack of anything that would indicate such completely ineffective assistance as could be shown without such a record, we cannot find that trial counsel was ineffective.[13] *See Holland*, 761 S.W.2d 307, 321 (Tex. Crim. App. 1988) (record must support appellant's claims of ineffective assistance).

---

[13]Jones contends that his "counsel's statements in voir dire and during the punishment phase of trial illustrate that he erroneously believed that if one enhancement paragraph was proved true, [Jones]'s punishment range was elevated to 15 to life.'" Jones also maintains that his trial counsel was ineffective for failing to object to the State's improper impeachment of the couple's son, Q.J., when he testified that he did not remember speaking to Prior on the night of Jones's arrest. Further, Jones contends that his counsel was ineffective for failing to object when the State asked Prior, "[I]n your experience as an officer, that's when you're going to get the most accurate, credible statements from witnesses, is that correct, at the time of the event." Jones maintains that such line of questioning "called for a witness to assess credibility." Finally, Jones maintains that his counsel was ineffective because he bolstered Prior's testimony. Specifically, Jones directs us to counsel's statement that the recording of the incident supported Prior's testimony that Ephraim's injury appeared to be a recent one.

The appellate record is silent as to why Jones's counsel chose a particular course of action during trial. *See Mata*, 226 S.W.3d at 431. Yet, even assuming that Jones has demonstrated error as to these particular contentions, which we do not find, he has failed to satisfy the second prong of *Strickland*. As we have already explained, the record

15

We overrule this point of error.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 12, 2020
Date Decided:       April 2, 2020

Do Not Publish

---

in this case does not support a finding that but for counsel's error, there is a reasonable probability that the results of the trial would have been different.

16